**REVERSE and REMAND in part; AFFIRM in part and Opinion Filed August 19, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00927-CV

**PROPHET EQUITY LP AND ROSS GATLIN, Appellants**
**V.**
**TWIN CITY FIRE INSURANCE COMPANY, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-12313**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Whitehill
Opinion by Justice Whitehill

This case concerns insurance coverage for wrongful employment practices in a terminated employee dispute. Prophet Equity LP and Ross Gatlin, the insureds, sued Twin City Fire Insurance Company after it denied indemnity coverage. On cross-summary judgment motions, the trial court granted Twin City's motion and denied Prophet's motion. (Prophet includes Prophet, Prophet Equity, LP, its affected affiliates, and Gatlin unless indicated otherwise.)

Fundamentally, we must interpret and apply this insuring obligation to that dispute:

### D. EMPLOYMENT PRACTICES LIABILITY INSURANCE

The Insurer shall pay, on behalf of any **Insured**, **Loss** arising from **Claims** for **Wrongful Acts** in connection with **Wrongful Employment Practices**.

In three issues with multiple subparts, Prophet argues that the trial court erred by: (i) rejecting its contract breach claim because it conclusively established coverage for which there

were no applicable exclusions, (ii) rejecting its confidentiality agreement breach, bad faith, and insurance code claims, and (iii) denying its no-evidence summary judgment motion on Twin City's remaining defenses.

We conclude in part that:

- Prophet established **Losses** arising from a **Claim** in connection with **Wrongful Employment Practices** that exhausted the underlying policies' limits.

- The **Wrongful Employment Practices** exception negates the **Insured** versus **Insured** (IvI) exclusion on which Twin City relies.

- Twin City did not show that the dishonesty exclusion applies, because there was no final adjudication establishing any of the acts to which this exclusion applies.

- Twin City did not show that Prophet failed to allocate **Losses** between covered and uncovered **Losses**, including **Defense Costs**.[1]

Thus, the trial court erred in granting Twin City's summary judgment motion and in denying Prophet's summary judgment motion regarding Prophet's contract breach claims.

The trial court also erred by dismissing Prophet's extracontractual claims except breach of the confidentiality agreement. Twin City did not move for summary judgment on Prophet's bad faith and insurance code claims. And even if we construe Twin City's statement that the extracontractual claims are conditioned on coverage as raising the issue, we have concluded that Prophet established coverage. So summary judgment on this ground would be error.

But Twin City's no-evidence motion addressed the confidentiality agreement breach claim, and Prophet did not respond or raise a fact issue regarding that claim, which the trial court properly dismissed.

We affirm the trial court's summary judgment for Twin City on the breach of confidentiality claim, reverse the trial court's summary judgment for Twin City and against

---

[1] The Policy's defined terms appear in bold in the Policy.

Prophet on all other claims and defenses, render judgment for Prophet for $4,123,382.61, and remand to the trial court for further proceedings.

## I. BACKGROUND

### A. The Parties' Relationships

In 2008, Gatlin and George Stelling partnered to raise a pool of equity capital and form a small market investment fund (the Prophet entities) to acquire control of underperforming entities. They formed Prophet Management to manage the fund. Stelling had a 30% interest in Prophet Management and acted as its Chief Operating Officer. Gatlin had a 70% interest and acted as its Chief Executive Officer and managing member.

According to Stelling, as Prophet Management's only members, Stelling and Gatlin were to receive guaranteed partner draws throughout the year with a substantial portion of their annual profits distributed at year end. They were also to receive carried interests. When profits were distributed, the limited partners/investors were to receive a preferential return with 20% of the remaining distribution going to the general partner. That distribution would then pass from the general partner to the limited partners as their "carried interests."

The partnership agreement required the general partner to create a new class of partnership rights to determine the carried interests once a new portfolio company was acquired. These new interests were to be reflected on a class designation schedule. Stelling alleges that his class sharing ratio for each portfolio company was to be a minimum of 22%.[2]

### B. The Policy

In January 2011, Prophet purchased a "Private Equity Professional and Management Liability Insurance Policy" (the HCC Policy). Prophet is an **Insured Organization** and Gatlin is an **Insured Person** under the HCC Policy. Prophet added employment practices liability coverage

---

[2] We rely on the parties' allegations for background purposes because the partnership agreement is not part of our record.

to the HCC Policy. That additional coverage undergirds this dispute. Prophet also purchased a first excess policy from Great American and a second excess policy from Twin City (the Policy).

All three policies have the same substantive coverage but at different loss levels. The HCC Policy has a $5,000,000 liability limit.[3] Great American covers the next $5,000,000, and Twin City covers an additional $5,000,000.

## C.     The Claim and Notice to Carriers

In October 2011, Gatlin removed Stelling as Prophet Management's COO and as interim president of a Prophet portfolio company. A few days later Stelling responded with a demand letter alleging wrongful termination and that Prophet and Gatlin were spreading rumors to harm his reputation and damage his career. Prophet notified all three carriers of Stelling's demand.

Prophet, Gatlin, and Stelling attended mediation, during which Stelling alleged breach of fiduciary duty, negligence, oppression, and wrongful termination and demanded $57,500,000 in damages. The mediation failed, and an arbitration followed.

## D.     The Arbitration

During the arbitration, Stelling continued to demand $57,500,000, alleging that Gatlin fired him to interfere with Stelling's contract rights and partnership benefits, and that Prophet misrepresented his responsibilities and the actions he took as COO that led to his termination. Stelling also asserted derivative claims on behalf of various Prophet entities. His thirty-six page First Amended Statement of Claim asserted nineteen causes of action against some combination of Prophet and Gatlin. Each count is rooted in Stelling's termination or its consequences.

The arbitration panel found partially for Stelling and entered an award that requires: (i) specific performance of Prophet's contracts with Stelling; (ii) Profit and Gatlin each to pay Stelling

---

[3] The HCC Policy is the most detailed of the policies and contains the specific provisions that establish the scope of coverage, exclusions, and exceptions.

$1,330,167.63 for his attorneys' fees and related arbitration fees and costs; (iii) Gatlin to pay Stelling $5,040,000 (without specifying what that amount compensates); and (iv) Gatlin to reimburse Prophet $4,227,432.74 for attorneys' fees incurred in the arbitration and up to $1,193,915.30 for any additional fees and expenses.

The 95th Judicial District Court of Dallas County confirmed the award. That judgment grants Stelling a total of $7,700,335.36 in monetary relief, consisting of $1,330,167.63 from Prophet and $6,370,167.63 from Gatlin. Prophet and Gatlin satisfied the judgment.

**E.      Other Claims Deplete the HCC Coverage**

Two other disputes partially depleted the $5,000,000 HCC Policy limits. Specifically, HCC paid $256,405.88 for the Ludlum claim and $949,216.45 for the Kerr claim. For summary judgment purposes, these payments and claim amounts were undisputed.

**F.      Post Judgment Mediations**

Following the arbitration award, all three carriers initially denied coverage. But in a subsequent joint mediation, HCC agreed to pay $2,323,180.16 for the Stelling matter.

During a first joint post-judgment mediation, Prophet submitted $13,052,468.96 in claimed **Losses** including $5,352,133.60 in **Defense Costs** and $7,700,335.36 in judgments. After subtracting the deductible, defense counsel fee write-offs, Gatlin's and Prophet's responsibility under the HCC settlement agreement, and HCC payments, $8,728,647.29 in claimed uncompensated **Losses** remained.

Prophet, Great American, and Twin City mediated again, after which Great American agreed to pay $3,127,949.07 on the Stelling matter. The settling parties recognized that this payment, augmented by other credits, exhausted the Great American policy limits.

## G.    Additional Costs Incurred

Between the first and second post-judgment mediations, Prophet and Gatlin incurred $473,686.88 in additional attorneys' fees and related costs.  After deducting defense counsel write-offs and the HCC and Great American payments, $3,804,709.60 in claimed **Losses** remained.  Additional attorneys' fees and related costs were subsequently incurred, bringing the total unpaid alleged **Losses** to $4,123,382.61.

## H.    The Lawsuit

When Twin City still wouldn't pay, Prophet sued, alleging contract breach, insurance code violations, and bad faith coverage denial.  Twin City answered with several affirmative defenses, including failure to exhaust the underlying policies and that the claims were barred by the Policy's terms, exclusions, and conditions.  Prophet amended its petition to allege breach of a confidentiality agreement.

All parties moved for summary judgment.[4]  Prophet requested a traditional summary judgment on the coverage issues and a no-evidence summary judgment on Twin City's affirmative defenses based on (i) the fraud/unlawful profit or advantage exclusion, (ii) the allocation exclusion, (iii) the insured versus insured exclusion, and (iv) Twin City's remaining affirmative defenses.

Twin City's motion cites both traditional and no-evidence standards, but it devotes only a footnote to a no-evidence point seeking summary judgment on Prophet's breach of the confidentiality agreement claim.  The remaining motion seeks traditional summary judgment on three of Twin City's affirmative defenses: (i) the allocation exclusion, (ii) the fraud/unlawful profit or advantage exclusion, and (iii) the insured versus insured exclusion.

---

[4] Prior to its motion, Twin City filed a no-evidence summary judgment on its affirmative defenses, but the court didn't rule on this motion, and it is not before us.

The trial court granted Twin City's motion, denied Prophet's motion, and entered a final judgment from which Prophet appeals.

## I.      Relevant Policy Terms

The Policy has these terms (bolded words are policy defined terms and appear in bold in the Policy):

## D.      EMPLOYMENT PRACTICES LIABILITY INSURANCE

> The Insurer shall pay, on behalf of any **Insured**, **Loss** arising from **Claims** for **Wrongful Acts** in connection with **Wrongful Employment Practices**.

It is undisputed that Gatlin and Prophet are both "**Insureds**" under the Policy.

"**Loss**" means:

> [D]amages, settlements, judgments, and **Defense Costs** incurred by any **Insured**, including pre and post judgment interest, back and front pay, punitive, exemplary or multiplied damages where insurable under the law of the most favorable venue to the **Insured** . . . . **Loss** shall not include . . . (7) any amount or claim for variable compensation or pay of any sort including, but not limited to bonuses, stock or other options, equity, benefits, and interest . . . .

But **Losses** do not include:

> (5) Any amount allocable to uncovered **Loss** under this Policy;
>
> (6) The return and/or disgorgement of any capital commitments or any money, assets or personal profit received by an **Insured** to which such **Insured** is not legally entitled as established by a final adjudication . . . .

"**Claim**" means:

> (1) any written demand for monetary or non-monetary damages or injunctive relief against an **Insured** alleging a **Wrongful Act,** deemed to be first made by receipt of such demand by the Insured;
>
> (2) any civil, judicial, administrative, regulatory or arbitration proceeding, including but not limited to any investigation . . . .

A "**Wrongful Act**" in this context includes "**Wrongful Employment Practices**."

**Wrongful Employment Practices** include:

> (3) termination, actual or constructive, of an employment relationship in any manner which is allegedly against the law;

(4) wrongful demotion, retaliation, misrepresentation, promissory estoppel and intentional interference with contract which arises from an employment relationship;

(5) libel, slander, defamation, infliction of emotional distress or mental anguish, humiliation, false imprisonment, invasion of privacy and other personal injury allegations that arise from the employment relationship;

(6) breach of an implied employment contract and breach of the covenant of good faith and fair dealing in the employment contract;

(7) employment terminations, disciplinary actions, demotions or other employment decisions . . . ;

(10) retaliation against an **Insured Person** . . . [and]

(11) wrongful deprivation of career opportunity. . . .

**Interrelated Wrongful Acts** means any "**Wrongful Acts** which have as a common nexus any fact, circumstances, situation, event, transaction or series of facts, circumstances, situations, events or transactions."

The Policy further provides that "more than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** constitute a single **Claim** . . . ."

**Defense Costs** means "legal fees and expenses (including expert fees) and cost . . . incurred by the **Insured** in defense of a **Claim** . . . ."

The Policy's Exclusion H excludes "any payment in connection with any **Claim** . . . by or on behalf of any **Insured** in any capacity . . . ."

## II.  ANALYSIS

### A.  Standard of Review

We begin with the parties' traditional summary judgment motions addressing the Policy's terms as applied to undisputed facts.[5]

---

[5] Ordinarily, when a party moves for both traditional and no-evidence summary judgments, we consider the no-evidence motion first and then review any surviving claims under the traditional standard. *See First United Pentecostal Church of Beaumont v. Parker,* 514 S.W.3d 214, 219 (Tex. 2017).  But Twin City's motion includes only one no-evidence issue pertaining to the breach of confidentiality agreement claim and many of Prophet's no-evidence points depend on the coverage issues raised in the traditional motions.  Because we review coverage issues before considering and exclusions or excerptions, we begin with the traditional motions.

–8–

The party moving for a traditional summary judgment has the burden to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). To determine if there is a fact issue, we review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could do so, and disregarding contrary evidence and inferences unless reasonable jurors could not. *Gonzalez v. Ramirez,* 463 S.W.3d 499, 504 (Tex. 2015) (per curiam). More than a scintilla of evidence exists, and the evidence raises a genuine fact issue, when the evidence rises to a level that would enable reasonable and fair minded jurors to differ in their conclusions in light of all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

When facing cross-motions for summary judgment, we apply the same standards of de novo review as when reviewing a trial court's ruling on a singular motion. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court grants one motion and denies the other, we must consider all the grounds presented by both sides, and in the case of an improper judgment, render the judgment the trial court should have rendered. *Id*.

## B.    General Principles

Liability insurance policies typically contain two main duties—a duty to defend and a duty to indemnify. *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co*., 300 S.W.3d 740, 743 (Tex. 2009). But this Policy includes only a duty to indemnify for specific **Losses**, which in this instance can include **Defense Costs**. *See id*. at 743-44; *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). A duty to indemnify is "triggered by the actual facts establishing liability in the underlying suit." *Trinity Universal*, 945 S.W.2d at 921.

The "insured bears the initial burden to establish the insurer's duty to indemnify by presenting sufficient facts to demonstrate coverage under the policy." *See Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 449 (Tex. App.—Dallas 2013, pet. denied).

The burden then shifts to the insurer to prove matters that might limit, avoid, exclude, or provide an exception to coverage. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). Policy exclusions or exceptions to coverage claimed by the insurer are avoidances or affirmative defenses. TEX. INS. CODE § 554.002.[6]

If the insurer conclusively establishes an affirmative defense to coverage, the summary judgment burden shifts back to the policy holder to show an exception to the exclusion. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's*, 327 S.W.3d 118, 124 (Tex. 2010).

We follow the general contract construction rules when interpreting policy terms. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). As with any contract interpretation, we start with the policy's language. *See Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017).

We "give policy language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). If the contract can be given an exact or certain legal interpretation, it is not ambiguous, and we must interpret the insurance policy's meaning and intent from its four corners. *TIG Ins. Co. v. North American Van Lines, Inc.*, 170 S.W.3d 264, 268 (Tex. App.—Dallas 2005, no pet.).

But we construe ambiguous or uncertain policy terms, including exclusions and exceptions to exclusions, in the insured's favor:

---

[6]"Sec. 554.002. BURDEN OF PROOF AND PLEADING. In a suit to recover under an insurance . . . contract, the insurer . . . has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded. Language of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense." TEX. INS. CODE § 554.002

If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written. * * * However, if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured. * * * The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. * * * In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.

*Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) (citations omitted).

**C.      First and Third Issues:  Did the trial court err by denying Prophet and Gatlin recovery under their breach of contract claims?**

Yes.  Based on this record, Prophet and Gatlin conclusively established that they suffered sufficient **Losses** related to the Stelling **Claim** to reach Twin City's layer and Twin City did not carry its burden to create a fact issue based on its asserted IvI exclusion or other coverage defenses.

**1.      General Framework**

The bulk of the parties' arguments involve analyzing insurance policy coverage terms and related policy based defenses.  The following diagram illustrates the analytical progression for sorting through those various relationships:



The Stelling Dispute

Claim = At a minimum, the arbitration, but the **Claim's** scope affects some recoverable **Losses**
Alleged **Losses** = Each $ category at issue (Less: any exceptions-personal advantage, variable compensation, allocation)
Alleged Exclusion = "IvI" applied to the whole **Claim**
Alleged Exception to Exclusion = **Wrongful Employment Practices**

From an overview perspective, the parties agree that (i) Prophet and Gatlin are **Insureds** and (ii) the underlying Stelling dispute presents a Policy **Claim** to some degree. Because the parties agree that there is a **Claim** to some degree, it is not necessary at this point to address the **Claim's** exact scope. We do that as it becomes relevant to other questions.

The parties also agree that there are seven categories of possible resulting **Losses** from the arbitration award. Because Prophet's IvI exclusion defense could completely resolve the contract breach claim, our contract breach analysis begins by discussing the **Losses**, which we initially assume are covered **Losses**, and then analyze in depth Step 1 in the preceding diagram.

### 2. What are Prophet's Losses?

The record reflects that Prophet suffered **Losses** consisting of at least paid damages, settlements, awards, judgments, and some **Defense Costs**. Specifically, Prophet's summary judgment evidence includes the final judgment confirming the award and proof that Prophet and Gatlin satisfied the judgment. Prophet also submitted (i) detailed bills reflecting the legal fees and expenses incurred in the underlying dispute and (ii) evidence of settlements with HCC and Great

American showing exhaustion of those Policy limits. Gatlin's detailed affidavit further describes his asserted **Losses**.

Collectively, Prophet and Gatlin showed asserted **Losses** (before subtracting the Great American and HCC payments) consisting of:

- HCC payment in the Kerr matter . . . . . . . . . . . . . . . . . . . . . . . . . $949,216.45

- Great American payment in the Kerr matter . . . . . . . . . . . . . . . . . . . .$22,050.93

- HCC payment in the Ludlum matter . . . . . . . . . . . . . . . . . . . . . . . . . $256,405.88

- Gatlin's "liability" payment to Stelling . . . . . . . . . . . . . . . ..$5,040,000.00

- Gatlin's reimbursement to Prophet for attorneys' fees . . . . . . . . . . . .$5,245,373.99

- Gatlin's payment to Stelling for arbitration fees/expenses . . . . . . . . $1,330,167.63

- Prophet's payment to Stelling for arbitration fees/expenses . . . . . . . $1,330,167.63

|  |  |
|---|---|
| Total claimed **Losses** | $14,173,382.51 |

Prophet also established other credits allegedly leaving $4,123,382.51 in **Losses** remaining to Twin City. Thus, if these numbers hold, Prophet proved Twin City's liability on its Policy to the extent the remaining **Losses** exceed $10,000,000. Twin City argues that Prophet's **Losses** do not exceed $10,000,000 due to the IvI exclusion, the personal gain exclusion, and other defenses. We begin with the IvI exclusion.

### 3. Does the IvI exclusion globally defeat Prophet's contract breach cause of action?

No, although an **Insured** v. **Insured** relationship exists here, the **Wrongful Employment Practices** exception negates the IvI exclusion as a global defense to Prophet's contract breach cause of action.

#### a. Introduction

Twin City's summary judgment motion argued that Policy's "unambiguous **Insured** v. **Insured** exclusion operates to sweep the entire underlying arbitration outside of coverage." To

–13–

that end, Twin City argued that "the underlying arbitration is precisely the sort of action that triggers the Policy's exclusion for claims asserted between individuals and entities that qualify as '**insureds**' under the Policy (the '**insured**' v. '**insured**' situation)." Such an exclusion, typically referred to as an "IvI exclusion," excludes coverage for any claim made by one insured against another. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 894–95 (Tex. 2017).

Prophet responded that Twin City's global IvI defense "is wrong because the exception to the **Insured** versus **Insured** exclusion applies to the entire **Claim** here, which is the Stelling Dispute, and therefore the **Insured** versus **Insured** exclusion is inapplicable." Prophet continues that argument on appeal.

We agree with Prophet because its Policy interpretation is at least one reasonable way to read that Policy.

### b.     Policy Text

To start, the IvI exclusion provides that "[t]he Insurer shall not be liable to make any payment in connection with any **Claim**" . . . "by or on behalf of any **Insured** in any capacity . . . ." The case would be simple if the Policy language stopped there; no **Insured** would have any coverage at all for **Wrongful Employment Practices**. But the text does not stop there. This exclusion has eleven exceptions, any of which makes the exclusion inapplicable to a **Claim** in connection with Stelling's demands, actions, etc. The question is whether Prophet conclusively established that one of those exceptions applies here.

Prophet urges that it conclusively established the **Wrongful Employment Practices** exception. *See Gilbert Tex. Constr.*, 327 S.W.3d at 124 (summary judgment burden reverts to an insured to show an exception to an exclusion). That exception negates the IvI exclusion when a **Claim** "is brought by one or more of the **Insured Persons** for **Wrongful Employment Practices**." That is, an IvI exclusion exception applies if (i) Stelling asserted **Wrongful Employment**

**Practices** by Prophet and (ii) there are **Losses** *arising from* **Wrongful Acts** in connection with those **Wrongful Employment Practices**.  Stated differently, Prophet contends that the exception's reach is conterminous with the Policy's I(D) payment obligation.

Prophet is at least arguably correct given the way that Policy parts I(D), for insuring agreements, and IV(H)(6), for exclusions, flow when read together.  And this result makes sense because reading part IV(H) without subsection (6) bringing **Wrongful Employment Practices** back into coverage would eliminate **Wrongful Employment Practices** coverage from the Policy contrary to the parties' stated intent to provide coverage for **Wrongful Employment Practices**.

More specifically, resolving the question requires deciding between the parties' competing interpretations of the (i) **EMPLOYMENT PRACTICES LIABILITY INSURANCE** payment obligation, (ii) IvI exclusion, and (iii) **Wrongful Employment Practices** exception.  The parties offer two interpretations to choose from:

> One, Twin City's premise that the exception does not apply because Stelling's derivative claim on Prophet's behalf is the relevant **Claim** and Prophet the entity therefore cannot be an **Insured Person** capable of invoking the exception;
>
> or,
>
> Two, Prophet's premise that the exception applies because the relevant **Claim** is the entire dispute Stelling the individual initiated and carried through to the ultimate judgment, which means that an Insured Person brought the **Claim** and can thus invoke the exception.

These two interpretations are somewhat like ships passing in the night.  Prophet's interpretation is reasonable to the extent Twin City offers the IvI exclusion as a complete defense to all alleged **Losses**, because to conclude otherwise would remove all **Wrongful Employment Practices** coverage obligations from coverage as concerns Stelling's employment termination.  That's obviously not what the parties intended and the law precludes us from accepting that result.  *See Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.

–15–

1991).  Furthermore, exceptions or limitations on liability, like the IvI exclusion here, "are strictly construed against the insurer and in favor of the insured." *Id.*

Additionally, **Wrongful Employment Practices** include at least (i) wrongful (contrary to law) terminations; (ii) intentional interference with a contract that arises from an employment relationship; (iii) libel, slander, or defamation any of which arise from the employment relationship; (iv) breach of a covenant of good faith and fair dealing in an employment contract; (v) employment terminations or other employment decisions; and (vi) wrongful deprivation of career opportunity.  Stelling's allegations against Prophet included these subjects.

Furthermore, Stelling's amended arbitration statement of claim shows that all of his nineteen counts involved **Interrelated Wrongful Acts** having "as a common nexus any fact, circumstance, situation, event, or transaction or series of facts, circumstances, situations, events or transactions [,]" related to Stelling's employment termination.  And the Policy provides that "more than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** constitute a single **Claim**."

Along those lines, the Policy's **Claim** definition includes:

(1) any demand for monetary or non-monetary damages, injunctive or other relief against an Insured alleging a **Wrongful Act,** deemed to be first made by receipt of such demand by the Insured;

(2) any civil, judicial, administrative, regulatory or arbitration proceeding, . . . initiated against any Insured for a **Wrongful Act**, any appeal therefrom . . . .

And, per the definition of a **Claim**, Prophet's **Claim** against Prophet began when Stelling sent his October 25, 2011 demand letter after Gatlin removed him as COO.  That letter referred to Stelling's wrongful employment termination, the alleged misrepresentations made about his work, and the ways those actions damaged his reputation and career.

Under these circumstances, one reasonable Policy reading is that it treats the entire arbitration rooted in Stelling's termination as a single **Claim** beginning with Stelling's initial

–16–

demand letter.  Because that reading is reasonable, that is how we construe the Policy on these facts.  *See id*.  Accordingly, we conclude that Prophet as a matter of law established that the **Wrongful Employment Practices** exception negates the IvI exclusion as a global defense to Prophet's breach of contract claim.[7]

But Twin City's argument that the IvI exclusion defeats coverage for specific **Losses** attributed to Stelling's derivatively asserted claims, which would reduce the aggregate **Losses** to an amount below Twin City's layer, requires further analysis.  We address those arguments next.

**4.      Does the IvI exclusion defeat coverage for Gatlin's Prophet reimbursements?**

**a.      Introduction**

The award imposed the following obligation on Gatlin:

> *2.      Prophet Equity LP (Derivative Counter-Claimant)*
>
> a.      It is further Awarded that Ross Gatlin, individually, pay to Prophet Equity LP Four Million Two Hundred Seventy-Three Thousand Four Hundred Thirty-Two and 74/100 Dollars ($4,273,432.74) as reimbursement of attorneys' fees and expenses incurred and paid by either Prophet Equity LP or any other Prophet Equity entity in connection with this arbitration.
>
> b.      It is further Awarded that Ross Gatlin, individually, pay to Prophet Equity LP up to an additional One Million One Hundred Ninety-Three Thousand Nine Hundred Fifteen and 30/100 Dollars ($1,193,915.30) to the extent any such additional amount in excess of the base amount of attorneys' fees and expenses of Four Million Two Hundred Seventy-Three Thousand Four Hundred Thirty-Two and 74/100 Dollars ($4,273,432.74) Awarded to Prophet Equity LP against Ross Gatlin in III B.2.a above represents attorneys' fees and expenses incurred and actually paid by either Prophet Equity LP or any other Prophet Equity entity in connection with this arbitration.

Twin City's summary judgment motion argued that the Policy required Prophet to allocate the award amounts between covered and uncovered **Losses**, including reimbursements, and that doing so drops the required **Losses** below the amount needed to reach Twin City's layer.[8]  To that

---

[7] Because we are construing the contract as a matter of law, the same result pertains regardless of which party had the burden on the issue.

[8] Twin City's "allocation" arguments present a question regarding which side bore the burden on the allocation issue.  We will address that question in more depth later in this opinion.

end, Twin City argued that (i) the IvI exclusion applies because both Prophet and Gatlin are **Insureds** and (ii) the **Wrongful Employment Practices** exception does not apply because Prophet, being an **Insured Organization**, is not an **Insured Person** as the exception requires. Twin City further asserted that Prophet, being a company, could not bring a wrongful employment claim in the first place.

Prophet responded that the exception applies because (i) the relevant **Claim** is the one Stelling, as an **Insured Person**, started and includes the entire process from start to finish; (ii) the exception is conterminous with the coverage clause so that the exception is met if the **Loss** would otherwise be in connection with a covered **Claim** for **Wrongful Employment Practices**; (iii) the obligation is for covered **Defense Costs** as well as damages; (iv) Prophet's actually incurred and paid fees for Gatlin to reimburse were only $1,563,838.85 thereby reducing Prophet's covered amount to only $2,559,543.79; and (v) Twin City did not carry its burden to show what portion of the Gatlin to Prophet reimbursement was not to reimburse **Defense Costs** incurred and paid in defending against Stelling's various assertions in connection with Prophet's **Wrongful Employment Practices**.

We agree with Prophet.

### b. Prophet's Attorneys' Fees and Arbitration Expenses Evidence

Prophet's evidence included a signed declaration from Prophet Equity LP's general counsel, David Rex. Prophet Equity LP is the payee named in the award's relevant reimbursement paragraphs. The Rex Declaration is nine pages long and contains sixty-six discrete paragraphs that authenticated (or in one instance summarized) Prophet's attorneys' fees or related expenses invoices (or invoice payments).

Sixty-five of those paragraphs referred to an attached invoice and declared that the invoice "demonstrates that legal fees and/or expenses were incurred in defense of a claim in the amount of

[$X].” Rex further declared that the “exhibits related to invoices for legal fees and expenses in the underlying dispute with George Stelling.” The declaration exhibits included hundreds of pages of invoices from law firms and other vendors in connection with the Stelling dispute. Twin City does not complain about admissibility of the declaration or its exhibits.

It follows that Prophet prima facially established that these fees and expenses were incurred **Defense Costs** of some sort. But Rex did not say whether these **Defense Costs** were incurred defending against (i) Stelling's personal claims, in which case they unquestionably would be covered **Losses**, or (ii) claims Stelling asserted derivatively on Prophet's behalf, which Twin City argues would render them not-covered **Losses** because of the IvI exclusion. Conversely, Twin City did not offer any evidence drawing those distinctions either. On this question, the parties present two basic questions:

> One, as Prophet argues, should the **Defense Costs** be viewed holistically as all being incurred in response to Stelling's allegations that he was wrongfully terminated and the consequences and damages resulting from Prophet's related **Wrongful Employment Practices**?

> Two, as Twin City urges, are these **Defense Costs** that Gatlin incurred (and ultimately paid to Prophet) defending against the Stelling asserted derivative claims uncovered **Losses** that Gatlin had to allocate between covered and not-covered **Losses**?

Twin City further asserts that sums that the award obligated to reimburse Prophet for attorneys' fees and arbitration expenses is a judgment amount that falls squarely within the IvI exclusion, without an exception, because Prophet is not an **Insured Person**. Prophet counters that the IvI exclusion does not apply because (i) this award is merely a reallocation of incurred **Defenses Costs** and (ii) Prophet never sought to recover these sums from Gatlin.

For the following reasons, we agree with Prophet that on this record these incurred sums are covered **Losses**.

### c. Analysis

To begin, "reimburse" means (i) "to make repayment to or for expense or loss incurred" and (ii) "to pay back; refund; repay." *Reimburse*, http://dictionary.com (last visited August 5, 2019).

Next, because Gatlin reimbursed these sums to Prophet (instead of to Stelling), they do not compensate Prophet for attorneys' fees and arbitration expenses Prophet incurred and paid for the purpose of pursuing the derivative claims. Indeed, there is no evidence that Prophet, which Gatlin controlled, ever spent any of its own money to pursue those claims. And Rex's declaration states that all fees referred to there were in defense of the Stelling's claims. Twin City adduced no contrary evidence.

Therefore, all of these outlays were indeed **Defense Costs**, and not damages, that were incurred due to allegations and causes of action that Stelling asserted in response to Prophet's allegedly **Wrongful Employment Practices** in connection with its terminating his employment. Stated differently, Prophet the entity would not have incurred and paid these **Defense Costs** but for Stelling's assertions that Prophet engaged in **Interrelated Wrongful Acts** in connection with **Wrongful Employment Practices** in connection with his employment termination. *See* part II(C)(3)(b) above. Accordingly, we conclude that Prophet's premise that the entire Gatlin to Prophet reimbursement sum is a covered **Loss** contemplated by the section I(D) **EMPLOYMENT PRACTICES LIABILITY INSURANCE** obligation is at least one reasonable interpretation of the Policy terms, as applied to this record, and decide this issue in Prophet's favor. *See Nat'l Union*, 811 S.W.2d at 555.

Furthermore, these **Defense Costs** were first incurred by Prophet and by reimbursement they were later incurred by Gatlin. Either way, they are **Defense Costs** in connection with the

Stelling dispute and Gatlin is an **Insured**. That is, the award did not change these sums' nature as **Defense Costs** incurred in connection with the **Claim** as discussed in part II(C)(3)(b) above.

Alternatively, Prophet having shown that the Gatlin to Prophet reimbursement was for **Defense Costs**, it was Twin City's burden to show what portion of those sums are allocable to uncovered **Losses**. TEX. INS. CODE § 554.002. But Twin City did not attempt to make that evidentiary showing, instead relying on its argument that it was Prophet's burden to do so. Because we conclude otherwise, we also reject Twin City's argument that Gatlin reimbursement to Prophet is not a recoverable **Loss** for this reason too.

Finally, we address Twin City's related "allocation" arguments later in this opinion.

### d.      Disposition

Accordingly, we agree that the entire $5,245,373.99 reimbursement sum is a covered **Loss** to be included when calculating Prophet's total **Losses** for purposes of determining whether its **Losses** reach Twin City's layer.

### 5.      Twin City's Remaining Arguments

### a.      Introduction

Twin City also argues that the **Wrongful Employment Practices** exception does not apply because (i) Stelling was not complaining about wrongful termination by the time of the arbitration; (ii) the $5.04 million award was for lost profits Stelling was entitled to receive but that Gatlin misappropriated for himself; and (iii) the $5.04 million award is not for tort damages as Prophet alleges.

Prophet disagrees for various reasons that we discuss below.

### b.      Nature of the Claim

To start, Twin City urges that the dispute was not an "employment dispute" because Stelling was not seeking recovery for past or future salary. Instead, it argues that it was a business dispute between former partners in which Stelling was seeking recovery of (i) distributions he

claimed Gatlin misappropriated and (ii) either his carried interests or class designation schedules reflecting his carried interests. To this end, Twin City relies on a one-page summary Stelling provided in response to the arbitrators' request. In particular, Twin City relies on Stelling's statement that Prophet misappropriated his carried interest and distributions to show that regardless of what Stelling may have claimed earlier, he was not asserting a **Wrongful Employment Practice Claim** by the time of the arbitration.

However, we conclude that Twin City's argument is based on an overly narrow reading of the Policy's language and an isolated reading of Stelling's arbitration statement. Specifically, **Claims** include demands or legal proceedings based on **Wrongful Employment Practices**.

Furthermore, the Policy and exception are not limited to **Claims** that are expressly labeled "wrongful termination." Rather, it reaches a wide range of **Wrongful Acts** including (but not limited to) (i) actual or constructive termination of an employment relationship, (ii) intentional interference with contract that arises from an employment relationship, (iii) breach of an implied employment contract and breach of the covenant of good faith and fair dealing; (iv) wrongful termination of an employment contract, (v) wrongful deprivation of career opportunity, and (vi) employment related defamation, libel, or slander.

And the Policy further expands the breadth of coverage by covering "**Claims** for **Wrongful Acts** in connection with **Wrongful Employment Practices**." In the insurance context, the phrase "in connection with" is expansive and can be satisfied by any range of causal or logical relationships. *See, e.g., Nationwide Mut. Ins. Co. v. Nunn*, 442 S.E.2d 340, 343 (N.C. 1994) ("in connection with" much broader than the phrase "arising out of."); *see also Artz* v. *Barnhart*, 330 F.3d 170, 174–75 (3d Cir. 2003) (construing the phrase as used in the Social Security Act).

Further, Texas law in other contexts construes the phrase "in connection with" equally broadly. Indeed, as one of our sister courts observed, "[I]n connection with is a phrase of

intentional breadth." *Titan Transp. LP v. Combs*, 433 S.W.3d 625, 637 (Tex. App.—Austin 2014, pet. denied) (construing statutory revenue exclusion); *see also El Paso Field Serv., L.P. v. Mastec N. Am., Inc.*, 389 S.W.3d 802, 808 (Tex. 2012) (construing "all risks in connection with" contract language to mean all risks); *Avocare GP LLC v. Heath,* No. 05-16-00409-CV, 2008 WL 56402, at *4 (Tex. App.—Dallas Jan. 5, 2017, no pet.) (mem. op.) (arbitration clause governing any dispute…arising out of or in connection with . . . reaches all aspects of the relationship).

Thus, a **Claim** is not limited to only those acts specifically identified as **Wrongful Employment Practices**; it also includes **Interrelated Wrongful Acts** in connection with such practices.

When deposed, Stelling testified that Prophet's actions disrupted his business and professional relationships and harmed his reputation. He added that, "generally, around town, folks know that I was sacked." He also testified that other consultants told him they heard that he had been fired for fraud. Stelling also said that Prophet's actions hurt him in the employment market. According to Stelling, Prophet had a legal obligation to continue to employ him and he believed that he was "wrongfully terminated."

Also, Stelling's arbitration First Amended Statement of Claim shows that all such claims had their genesis when, "Inexplicably on October 7, 2011, Gatlin removed Stelling as Chief Operating Officer and Interim President of Altec and from his duties at Prophet Management."

Likewise, the Policy's plain text states that the exception arises when a claim is "brought" for **Wrongful Employment Practices**; thus, we cannot read the Policy to mean that it arises only when an award is made or other **Loss** incurred. *See Anadarko Pet. Corp. v. Houston Cas. Co.,* 573 S.W.3d 187, 192 (Tex. 2019) (undefined words have their plain, ordinary, and accepted meanings unless the policy itself demonstrates the parties intended a different or more technical meaning). And, as we concluded in part II(C)(3)(b), all **Claims** involving the same **Wrongful** or **Interrelated**

**Wrongful Acts** are a single **Claim** that began with Stelling's demand letter and included all assertions *in connection with* his termination.

Moreover, Twin City's suggestion that the dispute's nature changed from what was initially employment-related to a partnership dispute outside the scope of coverage ignores the Policy language that, "More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single claim. "  It also ignores the broad scope that Policy section II(B)(1), (2)'s text gives to the term **Claim** (*see* part II(C)(3) above).

Here, the record shows that the Stelling **Claim** arose out of Prophet's termination of Stelling's employment.  That the **Claim** was initially labeled "wrongful termination" and was then subsequently expanded or refined is of no consequence because the substance of all of Stelling's assertions was interrelated and made in connection with his **Wrongful Employment Practices** assertions.  *See* part II(C)(3)(b) above.

Stelling's arbitration summary also asserts that Prophet breached fiduciary duties and an implied covenant of good faith and fair dealing—all arising out of the employment relationship with Prophet.  Thus, the summary judgment evidence establishes that the Stelling **Claim** was for **Wrongful Acts**, including **Interrelated Wrongful Acts**, in connection with Prophet's **Wrongful Employment Practices**.

Because the summary judgment evidence establishes as a matter of law that all requisites for the Policy's **Wrongful Employment Practices** exception were met, Prophet satisfied its burden to prove that this exception negates the IvI exclusion.

### c.      The $ 5.04 Million Award's Basis

The arbitrators awarded the $5.04 million without findings, reference to a particular cause of action, or any explanation regarding what that award compensates.  Instead, it simply orders:

> Cash payment. It is further Awarded that Ross Gatlin, individually, pay to George H. Stelling, Jr. a cash payment of Five Million Forty Thousand Dollars ($5,040,000.00).

Both parties speculate about this specific award's basis.[9]  But the Policy does not require Prophet to explain the arbitrators' rationale behind the $5.04 million award or otherwise link that award to a specific **Wrongful Employment Practice**.  Rather Twin City's payment obligation applies to **Losses** "arising from **Claims** for **Wrongful Acts** in connection with **Wrongful Employment Practices**."

The bottom line here is that the $5.04 million award represents damages Prophet suffered due to the Stelling **Claim**, which we have already decided includes the entire dispute from Stelling's demand letter through the arbitration award.  *See* part II(C)(3)(b) above.  Damages are within the Policy definition of a **Loss**.  And the exception applies when there is a **Loss** arising from a **Claim** brought *in connection with* a **Wrongful Employment Practice**.  Thus, this sum facially is a covered **Loss** as a matter of law unless Twin City presented evidence of a defense that would make this **Loss** an uncovered **Loss**.  *See* TEX. INS. CODE § 554.002.  It didn't.

### d. Variable Compensation

Twin City similarly argues that Prophet failed to establish coverage because Gatlin's $5.04 million payment to Stelling for distributions is variable compensation that is expressly excluded under the Policy's definition of **Loss**.  Prophet responds that this is a limitation on coverage that Twin City was required to prove.  *See id.*

Specifically, Twin City insists that the phrase "**Loss** shall not include . . . variable compensation" is not an exclusion; rather, it is merely part of the "loss" definition and thereby a

---

[9] Prophet argues that the $5.04 million must be a tort award for Stelling's lost salary and unreimbursed expenses.  Twin City argues that the $5.04 million corresponds to a calculation of lost profits Stelling was deprived of and that Gatlin misappropriated for himself.

precondition to coverage.[10]  But the insurance code does not require that language of exception or exclusion fall only within a policy's designated exclusions section.  In fact, the statute is clear that whenever an insurer seeks to rely on such language, regardless of where it appears in the policy, the insurer has the burden of proof.  *See id*.

Here, even if the language at issue is not technically an exclusion, it is nonetheless limiting language that excepts certain enumerated items from coverage.  Thus, Twin City had the burden to establish its application.  *See id*.

Twin City does not identify any summary judgment evidence establishing that the $5.04 million payment was for variable compensation, nor have we found any such evidence in the record.  We therefore conclude that Twin City failed to raise a fact issue, let alone establish as a matter of law, that the payment is not included in the **Loss** calculation.

e.  *Malooly*

Twin City also argues that the summary judgment must be affirmed because Prophet did not contest one of the grounds on which it could be affirmed—that the $5.04 million was not a covered **Loss**.  *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 199, 121 (Tex. 1970).  We disagree.

Twin City's summary judgment motion argued that $10 million in covered **Loss** did not fall within the **Wrongful Employment Practices** exception to the IvI exclusion for two reasons, (i) that Gatlin's $5.04 million payment to Stelling was not for future salary and (ii) the $5.04 million component of the arbitration award is not an award to an insured person and instead is an award to Prophet, an insured organization  There was no separate ground arguing that the $5.04 million was not a covered **Loss**.

---

[10] Tellingly, Twin City's summary judgment response referred to this clause as the "variable compensation exception" and it makes this argument here, as it did in the court below, not only as an argument concerning why Prophet failed to meet its initial burden to prove coverage but also when asserting that Prophet failed to properly allocate between covered and non-covered losses.  Twin City does not dispute, however, that allocation is one of the Policy's exclusions.  In fact, allocation is one of the affirmative defenses Twin City pled and relied on in its summary judgment motion.

Prophet's appellate issues argue, among other things, that (i) Prophet established a **Loss** (which includes the $5.04 million payment) relating to coverage under the Policy's employment practices liability terms sufficient to reach Twin City's layer; (ii) Twin City failed to establish that the IvI exclusion because the **Wrongful Employment Practices** exception negates the exclusion; and (iii) Prophet conclusively negated one or more essential elements of Twin City's affirmative defenses. Thus, Prophet addressed not only Twin City's grounds for summary judgment, but it also the arguments offered to support those grounds. So, *Malooly* doesn't apply here.[11]

### f. The Dishonesty Exception

Twin City also relied on the dishonesty exclusion to deny coverage. Thus, it had the burden to establish its applicability. *See JAW The Pointe*, 460 S.W.3d at 603. Prophet argues that Twin City did not carry its burden regarding this defense. We agree.

The dishonesty exclusion applies to "any deliberately dishonest, fraudulent, or criminal act or omission committed with the willful intent to deceive, or any personal profit or advantage gained by any **Insured** to which they were not legally entitled." (emphasis original). This exclusion requires that the deliberately dishonest, fraudulent or criminal act or personal profit or advantage be "established by final adjudication . . . adverse to the **Insured** in the underlying action."

Twin City focuses on the phrase "personal profit or advantage gained by any insured to which they were not legally entitled" to argue that the exclusion does not require that the profit or advantage result from fraud or other illegal conduct. *See Nat'l Union Fire Ins. Co. v. U.S. Bank, N.A.*, No. 4:07-CV-1958, 2008 WL 2405974, at *5 (S.D. Tex. June 11, 2008), *aff'd*, 597 F.3d 298 (5th Cir. 2010) (profit or advantage need not result from fraud or illegal conduct but rather the focus is whether the actor was "not legally entitled" to such profits or advantage). According to

---

[11] Moreover, because Twin City did not include its argument that the $5.04 million payment was not a covered loss as a separate ground for summary judgment, the rules did not require Prophet to raise an exception to Twin City's motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993).

Twin City, Gatlin "arrogated the $5.04 million to himself when that money belonged to Stelling," and thus gained a personal profit or advantage to which he was not entitled.

Once again, we are asked to speculate about the nature of the award. The parties offer competing theories as to what this award compensates. But the fact remains—there are no arbitral findings or explanations for the $5.04 million award. Contrary to Twin City's suggestion, the award does not say that (i) Gatlin is to "return" anything to Stelling, (ii) Stelling was entitled to something that Gatlin misappropriated, or (iii) Gatlin received anything of value. It simply orders Stelling to pay Gatlin $5.04 million.

More importantly, regardless of whether the conduct is labeled fraud or dishonesty or a personal profit or advantage, the exclusion requires that a final adjudication establish one of these enumerated types of conduct. This term requires a specific judgment or similarly express adjudication that the excluded conduct was the actual cause of damages. *See Pendergest-Holt v. Certain Underwriters at Lloyds of London*, 600 F.3d 562, 573 (5th Cir. 2010). There is no such adjudication here. Consequently, Twin City did not meet its burden to establish that the dishonesty exclusion removed this **Loss** from coverage.[12]

### g.      The $5.245 million and $1.33 million attorneys' fees payments

Twin City asserts that the IvI and dishonesty exclusions apply to the $5.245 million Gatlin was ordered to reimburse Prophet for attorneys' fees and the $1.33 million the arbitrators ordered Gatlin to pay for Stelling's attorneys' fees and expenses.[13] Specifically, it contends that the IvI exclusion applies because the $5.245 million was a judgment amount that one insured had to pay

---

[12] Likewise, for the same reasons, neither exclusion N (3) (**Loss** does not include matters deemed uninsurable by an adjudicative body) nor exclusion N (6) (**Loss** does not include disgorgement of personal property an insured is not entitled to receive as established by final adjudication) remove this **Loss** from coverage.

[13] Regarding the $5.245 million, the arbitration award required Gatlin to reimburse Prophet $4,272,432.74 for attorneys' fees and expenses incurred in the arbitration and up to $1,193,915.30 for any additional attorneys' fees and expenses. The final amount of such fees and expenses was $5,245,373.99, of which Gatlin paid Prophet $1,563,838.85 and HCC paid Prophet $3,681,535.14.

to another and the dishonesty exclusion applies because the amount was a personal advantage Gatlin gained at Prophet's expense.[14]

But Twin City ignores the Policy text stating that **Loss** includes **Defense Costs**. And **Defense Costs** include "legal fees and expenses . . . incurred by the **Insured**" and the Policy requires payment of **Loss** "on behalf of any **Insured**." Thus, the Policy required indemnity for not only Gatlin's and Prophet's liability to Stelling, but also for their legal fees and expenses incurred in defending against that liability. *See Anadarko*, 573 S.W.3d at 193-96.

That one insured, Prophet, initially paid the fees and expenses and due to an arbitration tribunal's award was reimbursed by another, Gatlin, does not equate to a claim made by one insured against another. Prophet did not sue Gatlin to recover its attorneys' fees. Rather, to the extent that these sums represent sums paid to outside counsel or vendors in connection with defending against the Stelling dispute, they are **Defenses Costs,** and the IvI exclusion does not apply. *See* part II(C)(4) above.

And we have already held that none of the specified conduct in the dishonesty exclusion was established by final adjudication.

Therefore, Twin City did not meet its burden to show that the dishonesty or IvI exclusions remove the attorneys' fees and expenses from coverage.

### h.      Allocation

#### i.      Introduction

According to Twin City, allocation between covered and non-covered **Losses** is required at each policy layer to determine whether that policy's layer has been exhausted. Twin City further

---

[14] Twin City also argues that the wrongful employment practices exception does not bring the $5.245 million back into coverage because Prophet cannot bring a claim for or be harmed by a wrongful employment practice because such a claim can only be brought by an insured person and Prophet is an insured organization. Twin City's argument is premised on the fact that Stelling asserted claims derivatively on behalf of Prophet. The record reflects, however, that although Stelling asserted claims individually and derivatively, he did not seek any damages or attorneys' fees on Prophet's behalf. Likewise, Stelling's arbitration summary seeks only damages for himself.

argues that Prophet failed to prove **Loss** exceeding $10 million because (i) the IvI exclusion applies to the entire Stelling dispute; (ii) there was no recovery for **Wrongful Employment Practices**; (iii) the HCC and Great American settlements were not payments for covered **Losses**; and (iv) Prophet failed to segregate **Defense Costs**.

Prophet responds that allocation is required only under the Twin City policy, and it proved $14,173,382.51 in covered **Losses**, which exceeds the $10 million threshold triggering Twin City's duty to indemnify.

We covered points (i) and (ii) in parts II(C)(3) and II(C)(5), respectively and need not address them again.

### ii. Analysis

The Policy's **Loss** definition underlies this dispute. After defining what a **Loss** includes, the Policy lists several items that are not a **Loss**, including a catch-all phrase that "**Loss** shall not include any amount allocable to uncovered **Loss** under this Policy."

A Policy endorsement more specifically addresses allocation, not by defining it, but by addressing what the insurer and **Insured** should do if there are both covered and uncovered **Losses**. If an **Insured** incurs both **Loss** covered under the Policy and **Loss** that is not covered by the Policy, the **Insured** and the insurer "shall use all reasonable efforts to agree upon a fair and proper allocation of such amount between covered **Loss** and uncovered loss." If there is an agreement on **Defense Costs**, the Insurer is to advance such costs allocated to covered loss on a quarterly basis. The Policy further provides:

> If there can be no agreement on an allocation of **Loss**:
>
> A. No presumption as to allocation shall exist in any arbitration, mediation, suit, or other proceeding;
>
> B. The Insurer shall advance **Defense Costs** which the Insurer believes to be covered under the Policy until a different allocation is negotiated, arbitrated, mediated, or judicially determined; and

C.  The Insurer, if requested by an Insured Person or the Insured organization, shall submit such dispute to binding arbitration or mediation . . . .

Although the parties frame the argument in terms of who has the burden to "allocate" between covered and uncovered **Loss**,[15] stripped to its essence, the issue is a matter of coverage and exclusions, both of which pertain to all layers of coverage. That is, Prophet had to prove any coverage exclusion. *Mid-Continent*, 410 S.W.3d at 449. Then, the burden shifted to Twin City to establish any coverage exclusion. *JAW The Pointe*, 460 S.W.3d at 603.

Other than distinguishing between covered and uncovered **Losses**, the Policy does not specify how "allocation" is to be made. Prophet's summary judgment evidence established that Prophet sought reimbursement for covered **Losses** and specifically excluded those items that it did not believe were covered. Those items included costs associated with satisfying the contractual performance aspect of the arbitration award and $899,119.50 in written off **Defense Costs**.[16] Thus, Prophet met its obligation to distinguish between covered and uncovered **Loss**. The burden then shifted to Twin City to demonstrate that some or all of the remaining asserted **Losses** were excluded from coverage. TEX. INS. CODE § 542.002. Twin City argued only that a different allocation was required but failed to raise a fact issue or establish such an allocation as a matter of law as to what those other allocations were.

Next, we consider whether Prophet demonstrated that the underlying coverage layers were exhausted so as to trigger Twin City's duty to indemnify. Exhaustion of the underlying layers is a condition precedent to an excess carrier's duty to indemnify. *St. Paul Mercury Ins. Co. v.*

---

[15] Ordinarily, when policy language is ambiguous, we construe it against the insurer and in favor of the insured, particularly when there are exceptions or liability limitations. *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). We also strive to give effect to all of the words and provisions in a policy so that none is rendered meaningless. *RSUI Indem. Co. v. The Lynd Co*., 466 S.W.3d 113, 118 (Tex. 2015). But the language here does not rise to the level of ambiguity.

[16] Twin City also argues that Exclusion G (barring coverage for an **Insured Organization's** liability under an express contract) makes Prophet's payment of $1,330,167.63 for Stelling's attorneys' fees and arbitration expenses an uncovered **Loss** because Stelling requested such fees and expenses pursuant to the LP Agreement. Prophet responds that damages or costs requiring performance of contractual duties were allocated to uncovered **Loss**, and it adduced summary judgment evidence to establish this assertion. As discussed above, Twin City did not prove that a different allocation was required. Consequently, Twin City's reliance on Exclusion G is misplaced.

*Lexington Ins. Co.*, 78 F.3d 202, 209 (5th Cir. 1996) ("Texas law dictates that primary policies' limits must be exhausted before excess insurers become liable."). The Twin City policy comports with this rule:

> It is expressly agreed that liability for any **Loss** shall attach to the Underwriters only after either: (i) the insurer(s) of the Primary Policy and Underlying Excess Policy(ies) shall have paid the full amount of their respective liability for such **Loss**; or (ii) the lnsured(s) shall have paid, in the applicable legal currency, any portion of such **Loss** that, together with any payments by such insurer(s) above, equals the limits of liability of the Underlying Insurance. The Underwriters shall then be liable to pay additional amounts of **Loss** up to the Limit of Liability.

Twin City maintains that the HCC and Great American settlement payments do not exhaust their layers because those payments were not for covered **Losses**, and in fact, HCC and Great American steadfastly denied coverage (until they didn't). Therefore, according to Twin City, Prophet's reliance on the paragraph in these settlement agreements stating that the HCC and Great American policies "will be deemed to be exhausted" is misplaced. Prophet, however, responds that it does not rely on those settlements to conclusively establish exhaustion, but that it is "some evidence of exhaustion that precludes summary judgment for Twin City."

Setting aside the gratuitous language in the HCC and Great American settlements (deeming coverage exhausted), the summary judgment evidence shows a $14,173,382.51 covered **Loss**, payment by HCC and the insureds under the HCC policy of $5,050,000., and payments by Great American and the insureds under the Great American policy of $5,000,000. Thus, the evidence shows that the $10 million underlying coverage threshold was met by payments for a **Loss** as defined in the Policy. The exhaustion of these underlying coverage limits triggered Twin City's duty to indemnify for covered **Losses**.

Finally, we consider Twin City's premise that Prophet failed to segregate between covered and uncovered claims in connection with the $5.245 million attorneys' fees payment and also failed to distinguish which fees were incurred to pursue their affirmative claims against Stelling.

Failure to properly allocate was an affirmative defense on which Twin City had the burden of proof.[17]  *See* TEX. INS. CODE § 554.002.  But there is no summary judgment evidence showing which, if any, of the **Defense Costs** were improper.[18]  Therefore, the trial court's summary judgment was in error to the extent it was based on this defense.

## C.   Second Issue:  Did the trial court err by granting summary judgment against Prophet's non-coverage claims?

Did the trial court err by granting summary judgment on Prophet's breach of confidentiality agreement, bad faith, and insurance code violation claims?  Yes, the trial court erred by granting summary judgment on Prophet's bad faith and insurance code claims because Twin City did not expressly move for summary judgment regarding these claims.  But, the trial court did not err by granting summary judgment on Prophet's confidentiality agreement claim, because Prophet submitted no response to Twin City's no evidence summary judgment motion attacking the damages element of that claim.

Twin City's motion cited *Progressive County. Mutual Insurance. Co. v. Boyd*, 177 S.W.3d 919 (Tex. 2005) for the premise that extracontractual recovery is conditioned on establishing coverage and states:

> Twin City, therefore, respectfully requests that the court enter judgment in Twin City's favor on Plaintiffs' claims for breach of contract and their claims for extracontractual relief.

Although Twin City included the foregoing request for judgment, it did not move for traditional or no-evidence summary judgment on the extracontractual issues.[19]  Rule 166a(i) "unconditionally requires a movant to specify the elements as to which there is no evidence." *Jose*

---

[17] Twin City pled allocation as an affirmative defense.

[18] Prophet requested a continuance to allow additional, discovery, argument, and briefing in this issue, but the trial court denied the request.

[19] In fact, Twin City's response to Prophet's summary judgment motion argues that a bad faith ruling would be premature.

*Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 286 (Tex. App.—Dallas 2013, pet. denied) (en banc). Passing references will not suffice to raise no-evidence summary judgment grounds. *Id.*

Likewise, a traditional motion must clearly state the alleged grounds for judgment on a specific cause of action. *Id.* Twin City's motion did not meet either requirement. Therefore, the trial court erred by granting summary judgment on Prophet's bad faith and insurance code violation claims.[20]

The breach of confidentiality agreement claim, however, is different. A footnote in Twin City's motion says:

> Twin City is also due summary judgment on Plaintiffs' claim for breach of confidentiality agreement. Damages are an essential element of a claim for breach of contract . . . Plaintiffs however, have no damages resulting from this alleged breach.

Prophet argues that Twin City's motion addresses only compensatory damages and does not include nominal damages or equitable relief such a specific performance. A plaintiff may be entitled to nominal damages for a contract breach, *see Fisher v. Westinghouse Credit Corp.*, 760 S.W.2d 802, 808 (Tex. App.—Dallas 1988, no writ), or in certain circumstances, to specific performance, *see Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535–36 (Tex. App.—Dallas 2007, pet. denied). But Prophet did not respond to this aspect of Twin City's motion—either by raising these points or by alleging the existence of a fact issue. Absent a timely response, a trial court must grant a no-evidence summary judgment motion that meets the requirements of rule 166a(i). *Bouie v. Kirkland's Stores, Inc.*, No. 05-12-00453-CV, 2013 WL 4033645, at *2 (Tex. App.—Dallas Aug. 8, 2013, no pet.) (mem. op.). Because there was no response to the summary judgment motion concerning breach of the confidentiality agreement, the trial court did not err by granting summary judgment on this ground.

---

[20] In addition, to the extent the trial court's judgment was based on the premise that the coverage issues determined Twin City's liability under the insurance code, it was erroneous. Contractual liability is not always a prerequisite for insurance code liability. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499–501 (Tex. 2018) (op. on reh'g).

## III.  DISPOSITION

We affirm the trial court's summary judgment in favor of Twin City on the breach of confidentiality claim, reverse the trial court's summary judgment in favor of Twin City and against Prophet on all other claims and defenses, render judgment for Prophet for $4,123,382.51, and remand to the trial court for further proceedings consistent with this opinion.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

170927F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

PROPHET EQUITY LP AND ROSS
GATLIN, Appellants

No. 05-17-00927-CV        V.

TWIN CITY FIRE INSURANCE
COMPANY, Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-12313.
Opinion delivered by Justice Whitehill.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** that portion of the trial court's summary judgment in favor of TWIN CITY FIRE INSURANCE COMPANY on the breach of confidentiality claim. We **REVERSE** the trial court's summary judgment in favor of TWIN CITY FIRE INSURANCE COMPANY and against PROPHET EQUITY LP AND ROSS GATLIN on all other claims and defenses, **RENDER** judgment for Prophet for $4,123,382.51, and **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants PROPHET EQUITY LP AND ROSS GATLIN recover their costs of this appeal from appellee TWIN CITY FIRE INSURANCE COMPANY.

Judgment entered August 19, 2019.